IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 09-cv-01644-LTB

MARK I. OROZCO,

        Plaintiff,
v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

_____

ORDER
_____

      Plaintiff, Mark I. Orozco, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and his application for supplemental security income, filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral arguments will not materially aid in the resolution of this appeal. After consideration of the parties' briefs, as well as the administrative record, I REVERSE the SSA Commissioner's final order and REMAND for further proceedings.

## I. STATEMENT OF THE CASE

      Plaintiff seeks judicial review of the SSA Commissioner's decision denying his applications for disability insurance benefits and supplemental security income. [Administrative Record ("AR") 117] After an evidentiary hearing on June 14, 2005, an Administrative Law Judge ("ALJ") issued a written ruling on September 14, 2005, denying Plaintiff's applications. [AR 39, 574] On May 1, 2006, the SSA Appeals Council remanded the case to the ALJ for

additional proceedings and medical evidence in order to clarify the present nature and severity of the mental impairments. [AR 75]

After a second hearing on February 21, 2008, the ALJ issued a written ruling on March 3, 2008, denying Plaintiff's applications on the basis that he was not disabled because he could perform work existing in significant numbers in the national economy (Step Five). [AR 18, 614] The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's determination on May 11, 2009, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 8] Plaintiff timely filed his complaint with this court seeking review of the Commissioner's decision.

## II. FACTS

Plaintiff was born in December 1957, and was 50 years old on the date of the ALJ's decision. [AR 24, 117] He has a high school equivalent education. [AR 24, 53, 151] His relevant prior work history is as a bartender, water truck operator, construction laborer, cook, fork lift operation, and telemarketer. [AR 51, 146, 157] Plaintiff alleges that he became disabled on September 3, 2003, due to his "breathing problems." [AR 117, 145] He also asserts that his is disabled due to his "asthma, back pain, depression, and anxiety." [AR 42, 145]

As to his physical limitations, the medical evidence before the ALJ reveals that Plaintiff was diagnosed with and treated for asthma since at least 1994-1995. [AR 145, 190, 235] Starting in April of 2002, through March of 2005, Plaintiff visited the emergency room numerous time for treatment and medications for asthma exacerbation. [AR 45-47, 573] On February 22, 2003, Paul Moore M.D. conducted a consultive examination and concluded that Plaintiff suffered from significant reactive airway disease. [AR 194] Dr. Moore concluded that Plaintiff could lift 20

pounds frequently and 50 pounds rarely, sit without limitation, stand and/or walk up to six hours in an eight-hour workday, with breaks as frequently as one hour; and "could perhaps increase his ability to stand and walk" with treatment. [AR 194]  On March 12, 2003, the Single Decision Maker – a disability examiner who may make the initial disability determination without requiring the signature of a medical consultant – reviewed the records and determined that Plaintiff could lift and carry up to 25 pounds frequently and 50 pounds occasionally; stand, walk, and/or sit for up to six hours with normal breaks; occasionally climb ramps and stairs (but not ladders, ropes, or scaffolds); and should avoid concentrated exposure to extreme temperatures and moderate exposure to fumes, odors, dusts, gases, and poor ventilation. [AR 200-07]

Between January and March 2004, Plaintiff was seen at Southern Colorado Family Medicine for erectile dysfunction, symptoms of anxiety, and back pain. [AR 275-82]  Plaintiff was assessed with "asthma flair," anxiety, back pain, and impotence, and was treated with prescribed medications. [AR 277-78]  From July 2005 through September 2007, Plaintiff was treated by Southern Colorado Family Medicine for asthma, chronic low back pain, and symptoms of depression and anxiety. [AR 517-27, 537-38]  During this time, Plaintiff presented to the emergency room over two dozen times for treatment and was released. [AR 388-453, 539, 557]    As to Plaintiff's mental impairments, the records reveal as follows.  Carlos Rodriguez, Ph.D., examined Plaintiff for eligibility in a state program in January and December of  2003, and again in November of 2004, and concluded that Plaintiff was disabled and unable to work for six or more months due to his depression, anxiety and substance abuse. [AR 320-25]

On June 1, 2005, Richard Madsen, Ph.D. performed a psychological evaluation of Plaintiff, and concluded that Plaintiff's ability to do work related activities was impaired. [AR

352-55] Dr. Madsen diagnosed Plaintiff with a depressive disorder with bipolar features, post-traumatic stress disorder because he was a victim of child abuse, a cognitive impairment, a personality disorder with borderline features, and assessed a Global Assessment of Functioning (GAF) score of 50. [AR 354, 528] On a Mental Residual Functional Capacity Evaluation form, Dr. Madsen indicated that Plaintiff had moderate limitations in the ability to sustain an ordinary routine without special supervision; accept instruction and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. [AR 356-57] Dr. Madsen further opined that Plaintiff had marked limitations in the ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances; and work in coordination with, or in proximity, to others without being distracted by them. [AR 356-57]

In July of 2005, Dr. Rodriguez completed a Mental Residual Functional Capacity Evaluation form indicating that as of January 2003, Plaintiff had moderate, marked, and extreme impairments in many areas of mental functioning. [AR 386-87] He opined that Plaintiff had moderate limitations in the ability to interact appropriately with the general public, ask simple questions or request assistance, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes; moderate to marked limitations in the ability to work in coordination with or in proximity to others without being distracted by them, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and respond appropriately to changes in the work setting; and marked limitations in the ability to understand,

4

remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances; and sustain an ordinary routine without special supervision; marked to extreme limitations in the ability to accept instructions and respond appropriately to criticism from supervisors, be aware of normal hazards, and take appropriate precautions; and extreme limitations in the ability to set realistic goals or make plans independently of others. [AR 386-87] On April 11, 2007, Dr. Rodriguez, Ph.D. again opined that Plaintiff was disabled and unable to work for six or more months. [AR 454-55]

Following the remand, Brett Valette, Ph.D. performed a consultative mental examination on September 12, 2007. [AR 529-33] Dr. Valette assessed Plaintiff with a generalized anxiety and depressive disorder, but noted that his reported symptoms could be caused by polysubstance abuse and a mood disorder. [AR 532] Dr. Valette concluded that Plaintiff did not have any mental impairments or limitations. [AR 534-36]

### III. LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled under Title II and Title XVI of the Social Security Act which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If he is, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520, 416.920. Step Two is a determination whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant is unable to show that his medical impairment(s) would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment is not listed, he is not presumed to be conclusively disabled. Step Four then requires the claimant to show that his impairment(s) and assessed residual functional capacity ("RFC") prevent him from performing work that he has performed in the past. If the claimant is able to perform his previous work, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520 (e)&(f), 416.920(e)&(f). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps as discussed, the analysis proceeds to Step Five where the Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of his age, education and work experience. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## IV. ALJ's RULING

The ALJ ruled that Plaintiff had not engaged in substantial gainful activity since 2003 (Step One). [AR 20] The ALJ next determined that Plaintiff had a "severe" impairment due to his asthma, but specifically found no "severe" mental or substance abuse impairment (Step Two). [AR 20] The ALJ further determined that such impairment or combination of impairments did

not meet or medically equal a listed impairment deemed to be so severe as to preclude substantial gainful employment (Step Three). [AR 21]

As a result, the ALJ went on to find that Plaintiff had the RFC to perform medium work with the following limitations: no climbing of ladders, ropes and scaffolds; only occasional climbing of ramps and stairs; and limited exposure to lung irritants and temperature extremes. [AR 21] The ALJ then found that Plaintiff was unable to perform his past relevant work (Step Four). [AR 16A] However, after reviewing the Medical Vocational Guidelines, the ALJ concluded that Plaintiff was able to perform jobs which exist in substantial numbers in the national economy (Step Five). [AR 25] As such, the ALJ concluded that Plaintiff was not disabled at Step Five of the sequential process and, therefore, was not under disability as defined by the Social Security Act. [AR 25]

## V. STANDARD OF REVIEW

This court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000). Thus, the function of my review of the factual findings is to determine whether they "are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). With regard to the application of the law, reversal may be appropriate when the SSA Commissioner either applies an incorrect legal standard or fails to

demonstrate reliance on the correct legal standards. *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996).

## VI. ISSUES ON APPEAL

A.  ALJ Erred in Relying on Grids at Step Five

On appeal, Plaintiff first contends that the ALJ erred in relying solely on the Medical Vocational Guidelines (the "Grids"), without taking any evidence from the vocational expert, to conclude that he is able to perform jobs which exist in substantial numbers in the national economy at Step Five of the sequential process. I agree.

If, as here, the claimant makes out his *prima facie* disability case though Step Four of the sequential process, the SSA Commissioner has the burden of demonstrating that the claimant is able to perform other work in the national economy in view of his RFC, age, education and work experience at Step Five of the process. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). The Grids are tables created by the SSA which evaluate a claimant's ability to work by matching his age, education, and work experience with his work capability and then help to evaluate whether there exist sufficient jobs that can be performed by the claimant given those criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 2; *Hargis v. Sullivan,* 945 F.2d 1482, 1490 (10th Cir.1991). In other words, the Grids provide presumptions regarding whether jobs exist in significant numbers in the national economy given the particular limitations possessed by the claimant. *Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir.1987). "The grids are a shortcut that eliminate the need for calling in vocational experts." *Trimiar v. Sullivan*, 966 F.2d 1326, 1332 (10th Cir. 1992)(*quoting Bohr v. Bowen,* 849 F.2d 219, 221 (6th Cir. 1988)).

The Grids are not to be applied conclusively, however, unless the claimant's RFC allows him to "perform the full range of work required of that [RFC] category on a daily basis and unless the claimant possesses the physical capacities to perform most of the jobs in that range." *Hargis v. Sullivan, supra*, 945 F.2d at 1490 (*citing Channel v. Heckler*, 747 F.2d 577, 580 (10th Cir. 1984)). Thus, "an ALJ may not rely conclusively on the grids unless he or she finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993).

In this case, the ALJ found that Plaintiff's RFC included the nonexertional limitations that he could only have limited exposure to lung irritants and temperature extremes. *See* 20 C.F.R. §§ 404.1569a, 416.969a. In addition, Plaintiff could not climb ladders, ropes and scaffolds, and could only occasionally climb ramps and stairs. Limitations that affect a claimant's ability to meet the demands of the job, other than the necessary strength requirements, are "nonextertional" limitations. *Id.*

Plaintiff's assessed nonexertional limitations precluded the ALJ's reliance on the Grids to find that he was not disabled at Step Five. *See* SSR 83-14 (discussing environmental restriction as nonexertional impairment precluding reliance on grids); *Cox v. Apfel*, 1998 WL 864118 (not selected for publication)(10th Cir. 1998)(ruling that the ALJ's findings that the claimant must avoid respiratory irritants and cannot stand or walk for long periods precluded his conclusive reliance on the Grids). "Whenever a claimant's [RFC] is diminished by both exertional and nonexertional impairments, the Secretary must produce expert vocational testimony or other similar evidence to establish the existence of jobs in the national economy." *Hargis v. Sullivan,*

*supra,* 945 F.2d at 1491 (*citing Channel v. Heckler*, *supra*, 747 F.2d at 580).

I reject the SAA Commissioner's argument that the ALJ did not err when relying on the Grids because Plaintiff's nonexertional limitations are not significant and that the number of jobs identified by the Grids are not significantly eroded by those limitations. The Commissioner relies on SSR 83-14, which provides that a ALJ "may" use vocational resources where it is clear that the nonexertional limitation has very little effect on the exertional occupational base.

To the extent that the SSA Commissioner asserts that the ALJ found that the number of jobs identified in the Grids were not significantly eroded by Plaintiff's limitation, my review of the ALJ's order does not reveal such a finding. Rather, the ALJ's order does not address whether Plaintiff's nonexertional impairments where significant or, as such, whether he was able to perform the full range of work at the relevant RFC level on a daily basis. The order also does not indicate a determination of whether Plaintiff could perform most of the jobs in his assessed RFC level. As such, the ALJ's conclusive reliance on the Grids to meet the SSA Commissioner's burden of proving that Plaintiff could perform other work in the national economy at Step Five was clear error. *See Thompson v. Sullivan*, *supra*, 987 F.2d at 1492.

I agree with Plaintiff that the SSA Commissioner's argument here constitutes an improper *post hoc* rationalization for the ALJ's conclusion. *See Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007). As such, I conclude that because the ALJ's order fails to demonstrate reliance on the correct legal standards, reversal is appropriate. *See Winfrey v. Chater, supra,* 92 F.3d at 1019; *Saiz v. Barnhart,* 392 F.3d 397, 400 (10th Cir. 2004)(noting that it has –"on occasions too numerous to require citation"– reversed determinations of non-disability for lack of the requisite match between the assessed RFC and the Grids).

B. Remaining Claims of Error

On appeal, Plaintiff also asserts the following errors by the ALJ. He asserts that the ALJ erred in failing to fully analyze, in his decision, the opinion of examining physician Dr. Valette pursuant to the six factors set forth in 20 C.F.R. § 404.1527(d) and § 416.927(d). Specifically, he argues that Dr. Valette's opinion that Plaintiff does not have a severe mental impairment – which was accepted and adopted by the ALJ – was not properly weighed against the conflicting opinions of two other examining physicians. In addition, Plaintiff also asserts that the ALJ did not properly evaluate the differing opinions of the consulting physician and the Single Decision Maker related to some of his physical limitations. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003); SSR 96-2p. Finally, Plaintiff maintains that the ALJ erred when he concluded – without any analysis – that Plaintiff's impairments did not meet a listed impairment at Step Three of the sequential process.; specifically, he argues that there is sufficient evidence that his asthma meets Listing 3.03(B). *See Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996)(ruling that the ALJ may not "merely state a summary conclusion that [a claimant's] impairments did not meet or equal any Listed Impairment [in that s]uch a bare conclusion is beyond meaningful judicial review"). A cursory review of these claims reveal that they are not without merit.

## V. REMAND

Although Plaintiff seeks an immediate award of benefits, in the exercise of my discretion, I decline this request and remand this case for further proceedings. *See Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir.1993). As is the case here, remand for further proceedings is generally required unless it would serve no purpose. *Dollar v. Bowen*, 821 F.2d 530, 534 (10th

Cir.1987)(citations omitted). Therefore, I remand this case for further proceedings and direct the ALJ to reassess whether Plaintiff is able to perform jobs which exist in substantial numbers in the national economy at Step Five of the sequential process. In so doing, I further direct that the ALJ review and address Plaintiff's remaining claims of error as outlined above.

Accordingly, IT IS THEREFORE ORDERED that the Commissioner's decision is REVERSED and REMANDED to the SSA Commissioner with directions to remand to the Administrative Law Judge for proceedings consistent with this opinion.

Dated: April  22 , 2010 in Denver, Colorado.

                                      BY THE COURT:

                                       s/Lewis T. Babcock
                                      LEWIS T. BABCOCK, JUDGE